IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

STEVEN R. VICK,
    Petitioner,

vs.                                          Case No.:  3:04cv161/RV/EMT

FLORIDA PAROLE COMMISSION,
    Respondent.
_____/

**REPORT AND RECOMMENDATION**

    Before the court is an amended petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (Doc. 9).  Respondent filed an answer (Doc. 13), to which Petitioner responded (Doc. 15). The court subsequently directed the parties to provide additional briefing on the issue of mootness (*see* Doc. 16).  Respondent filed a supplemental answer contending the petition should be dismissed as moot (Doc. 20).  Petitioner failed to respond to the order.

    This matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(b).  After careful consideration of the pleadings and attachments submitted by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter and, furthermore, that the petition should be dismissed as moot.

    The underlying facts are undisputed.  On May 20, 1986, Petitioner was sentenced in the Escambia County Circuit Court to thirteen concurrent seventeen-year sentences and four concurrent five-year sentences for offenses that occurred in 1985 (*see* Doc. 13, Ex. A).  On November 9, 1993, the Florida Parole Commission ("Parole Commission") released Petitioner to control release supervision, subject to terms and conditions, to expire in October of 2002 (*id*., Ex. B).  On February 14, 2001, the Parole Commission entered a Revocation of Control Release Order effective August

23, 2000, and Petition was returned to prison to serve the remainder of his sentences (*id*., Ex. C). Pursuant to Florida Statutes section 944.28(1), the Florida Department of Corrections forfeited all previously awarded gain time upon revocation of control release supervision (*id*., Ex. A).

On May 22, 2001, Petitioner filed a petition for writ of habeas corpus in the Walton County Circuit Court seeking immediate release through the application of time served, administrative gain time, provisional credits, and gain time earned prior to his control release (*id*., Ex. D). The state court denied the petition on July 9, 2001, on the ground that Petitioner failed to state a prima facie claim for relief (*id*., Ex. E). Petitioner appealed the decision to the Florida First District Court of Appeals (First DCA), and the appellate court denied relief on June 13, 2002 (*id*., Ex. F).

On December 30, 2002, Petitioner filed a second habeas petition with the Walton County Circuit Court challenging the length of his term of control release (*id*., Ex. G). The state court denied the petition as successive and an abuse of the writ (*id*., Ex. L). Petitioner appealed the decision to the First DCA, and the appellate court affirmed on March 24, 2004 (*id*., Ex. M).

On April 27, 2004, Petitioner filed the instant federal habeas action (*see* Doc. 1). Petitioner challenges the state court's denial of his second state habeas petition as successive. Upon taking this case under advisement, the Court noted that the website of the Florida Department of Corrections indicated that Petitioner was released from incarceration on February 1, 2005. The court therefore directed the parties to address the issue of mootness. In response, Respondent contends there is no live case or controversy because Petitioner's sentence has now expired, therefore, the petition should be dismissed as moot.

Whether an action is moot is a jurisdictional matter because it implicates the Article III requirement that there be a live case or controversy. <u>Bailey v. Southerland</u>, 821 F.2d 277, 278 (5th Cir. 1987). Upon expiration of an inmate's sentence, some concrete and continuing injury, or "collateral consequence" of the conviction must exist if the habeas action is to be maintained. <u>Spencer v. Kemna</u>, 523 U.S. 1, 7, 118 S.Ct. 978, 983, 140 L.Ed.2d 43 (1998). The Supreme Court developed the collateral consequences doctrine beginning with <u>Pollard v. United States</u>, 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957), when it held that a habeas petitioner challenging the validity of his conviction had an active case in controversy even though he had been released,

because his conviction might affect his resident alien status. As the doctrine developed in subsequent cases, the Court required petitioners to plead and prove the existence of collateral consequences to maintain a habeas action after release from incarceration. The Court found that such consequences existed in instances where a petitioner claimed that his conviction rendered him unable to engage in certain businesses or serve as an official in a labor union, Carafas v. LaVallee, 391 U.S. 234, 238, 88 S.Ct. 1556, 1559-60, 20 L.Ed.2d 554 (1968), it rendered him ineligible to serve as a juror, Fiswick v. United States, 329 U.S. 211, 221-23, 67 S.Ct. 224, 229-30, 91 L.Ed. 196 (1946), it might subsequently increase a current sentence under state recidivist law, Parker v. Ellis, 362 U.S. 574, 576, 80 S.Ct. 909, 911, 4 L.Ed.2d 963 (1960), or might result in the revocation of a business license, Ginsberg v. New York, 390 U.S. 629, 633 n.2, 88 S.Ct. 1274, 1277 n.2, 20 L.Ed.2d 195 (1968). The requirement of pleading and proving collateral consequences disappeared in Sibron v. New York, when the Supreme Court announced that it had "abandoned all inquiry into the existence of collateral consequences and in effect presumed that they existed." 392 U.S. 40, 55, 88 S.Ct. 1889, 1898, 20 L.Ed.2d 917 (1968). The Court added to the list of collateral consequences in Evitts v. Lucey, when it held that collateral consequences included the denial of the right to vote and hold public office, and the possibility of being impeached as a witness at a future time. 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985).

Each of the foregoing cases, however, involved a challenge to a conviction, not a challenge to the calculation of a term of control release supervision, which is the sole issue in the instant case. In Lane v. Williams, 455 U.S. 624, 102 S.Ct. 1322, 71 L.Ed.2d 508 (1982), the Supreme Court refused to extend the presumption of collateral consequences (or its willingness to accept hypothetical consequences) to a prisoner's challenge to the parole portion of his sentence and not his conviction, thereby requiring the habeas petitioner to prove the existence of collateral consequences to overcome the mootness issue that arose upon the expiration of his sentence. The Court rejected the contention that an inmate suffered collateral consequences as a result of a parole revocation simply because the revocation could be used to the petitioner's detriment in future parole proceedings should he ever be convicted of other crimes. *Id.*

Similarly, in Spencer v. Kemna, the Court held that a habeas petitioner challenging a parole revocation after his sentence had expired must specifically identify concrete disadvantages or disabilities that had in fact occurred, that were imminently threatened, or that were imposed as a matter of law, and that were attributable to the parole revocation. 523 U.S. at 14. Spencer argued that the parole revocation could be used to his detriment in a future parole proceeding, could be used to increase his sentence in a future sentencing proceeding, could be used to impeach him if he appeared as a witness or litigant in a future judicial proceeding, or could be used against him directly if he appeared as a defendant in a future criminal proceeding. The Court rejected these contentions as speculative. 523 U.S. at 14-16.

In the instant case, Petitioner's ultimate objective was to show that the Parole Commission improperly calculated the length of his term of controlled release such that the term had expired at the time of the revocation, thereby entitling him to immediate release from incarceration. However, because his sentence has now fully expired, this Court finds that there is no longer a case or controversy to litigate. A favorable decision on the merits would not entitle Petitioner to any additional relief, and therefore he no longer has a personal stake in the outcome. *See* Graham v. United States Parole Comm'n, 732 F.2d 849, 850 (11th Cir. 1984) (dismissing habeas petition as moot where petitioner ultimately sought release on parole and was released during pendency of habeas action) (quotations omitted); *see also* Ashkenazi v. Attorney General, 346 F.3d 191, 192 (D.C. Cir. 2003) (whether BOP policy permitting assignment of inmates to halfway houses for only last ten percent of sentences violated ex post facto prohibitions was moot because petitioner came within last ten percent of term of incarceration during pendency of habeas petition, and BOP policy could have no future effect on petitioner); Bugarin-Juarez v. Weiss, 76 Fed.Appx. 773, 774, 2003 WL 21949137 (9th Cir. 2003) (appeal rendered moot by petitioner's release from BOP custody, where there was no longer possibility petitioner could face transfer from halfway house to penal facility pursuant to new BOP policy).

Furthermore, no civil disabilities result from an erroneous calculation of a term of controlled release. *See* Lane, 455 U.S. at 632. Consequently, the reasoning of Lane and Spencer is binding. There are no collateral consequences to the allegedly erroneous calculation of Petitioner's term of

controlled release.  Moreover, Petitioner does not assert that any of the exceptions to the mootness doctrine apply.

For the foregoing reasons, it is respectfully **RECOMMENDED** that:

The amended petition for writ of habeas corpus (Doc. 9) be **DISMISSED** as moot.

At Pensacola, Florida, this 13th day of September 2005.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.**  *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**